IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZOOM TAN, INC., <br>     Plaintiff, <br><br> v. <br><br> 1024 MARKET STREET INC., <br>     Defendant. | ) <br> ) <br> )    C.A. No. 24-324 Erie <br> ) <br> ) <br> )    District Judge Susan Paradise Baxter <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION
## WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Procedural History

Plaintiff Zoom Tan, Inc., initiated this civil action on November 22, 2024, by filing a complaint against Defendant 1024 Market Street Inc., a commercial landlord that leases space to Plaintiff at a shopping plaza located at 1530 West 26th Street, Erie, PA 16508 (the "Shopping Plaza"). [ECF No. 1]. The complaint asserts a single claim of breach of contract arising from Defendant's alleged violation of an exclusivity provision contained in Plaintiff's lease assignment agreement. In particular, Plaintiff alleges that Defendant violated the exclusivity provision by leasing space within the same Shopping Plaza to Crunch Fitness, a fitness facility that offers tanning services to its members. As relief for its claims, Plaintiff seeks, *inter alia*, permanent injunctive relief.

Presently pending before the Court is Plaintiff's motion for preliminary injunction [ECF No. 2], which seeks to enjoin Defendant from allowing Crunch Fitness or any tenant in the

1

Shopping Plaza other than Plaintiff to provide tanning services.[1] An evidentiary hearing on RPM's motion for preliminary injunction was held before this Court on December 12, 2024, during which the Court heard testimony from Andrew Nahum ("Nahum"), principal and asset manager for Chai Management, the operating business under which Defendant acts as the real estate holding company. The parties have also submitted several declarations[2] and a number of exhibits on the record. This matter is now ripe for disposition.

Before turning to a discussion of the merits of Plaintiff's motion, it is necessary to set out the standards governing the Court's decision.

## II.   Standards of Review

The Court of Appeals for the Third Circuit recently reiterated the standards to be used in resolving motions for preliminary injunction: "[a] court weighing a preliminary injunction must consider four guideposts: (1) the movants' likelihood of success on the merits; (2) the risk that the movants will suffer irreparable harm absent preliminary relief; (3) the balance of equities; and (4) the public interest." Boynes v. Limetree Bay Ventures LLC, 110 F.4th 604, 610 (3d Cir. 2024). Of these factors, the first two factors are the "most critical." Nken v. Holder, 556 U.S. 418, 434 (2009). If the first two are present, only then should a court consider the remaining factors. Id. at 435.

---

[1] By Order dated November 26, 2024, the Court previously granted Plaintiff's request for a temporary restraining order to preserve the status quo between the parties until December 12, 2024. [ECF No. 17]. This temporary restraining order has not been extended by the Court and is now expired.

[2] Plaintiff has submitted the declarations of its President, Tony Toepfer [ECF No. 2-2] and its general counsel, John S. Sarrett [ECF No. 22-1], and Defendant has submitted the declarations of Andrew Nahum [ECF No. 21-1], Avi Nechemia, an owner and principal of Defendant [ECF No. 21-5], and Michael Nechemia, principal of Alinea Capital Group LLC, one of the property manager companies of the Shopping Plaza [ECF No. 21-6].

2

When deciding a request for injunctive relief, a district court assumes the dual role of both factfinder and legal adjudicator. Doe v. Pine-Richland Sch. Dist., 2024 WL 2058437, at *1 (W.D. Pa. May 7, 2024). Consequently, the court is required to make "findings of fact and conclusions of law upon the granting or refusing of a preliminary injunction." Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1178 (3d Cir. 1990) citing Fed. R. Civ. P. 52(a)(2). This obligation imposed by Rule 52(a)(2) remains mandatory "even when there has been no evidentiary hearing on the motion." Id. However, at the preliminary injunction stage, "procedures are less formal and evidence is less complete than in a trial on the merits." Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 718 (3d Cir. 2004). Additionally, the grant or denial of a preliminary injunction is typically based on a limited set of facts, necessitating a delicate balancing act by the district judge. AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994). Therefore, the court "may rely on affidavits and hearsay materials which would not be admissible evidence." Kos Pharms., 369 F.3d at 718, quoting Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995). The significance attributed to such materials will "vary greatly depending on the facts and circumstances of a given case." Id. at 719. Additionally, the court is responsible for assessing the credibility of witness testimony and may base its decision to grant or deny a preliminary injunction on these credibility determinations. See, e.g., Hudson Glob. Res. Holdings, Inc. v. Hill, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007).

"[A] preliminary injunction is an extraordinary and drastic remedy." See Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec., 108 F.4th 194, 202 (3d Cir. July 15, 2024) quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (internal quotation marks and emphasis omitted). Issuing an injunction requires a court to exercise "great caution,

3

deliberation, and sound discretion." Id. at 199-200 (citation omitted). "A court should not grant an injunction unless the plaintiff's right is clear, his impending injury is great, and only an injunction can avert that injury." Id. The movant bears the ultimate burden of making "a clear showing" of its entitlement to such preliminary relief. Id. at 202.

In analyzing a request for preliminary injunctive relief, there are four factors a court must consider:

> (1) The likelihood of success on the merits;
>
> (2) The risk of irreparable injury absent preliminary relief;
>
> (3) The balance of equities; and
>
> (4) The public interest.

Delaware State Sportsmen's Assoc., 108 F.4th at 202 (referring to the factors as the "four canonical guideposts"). The first two "gateway factors" are paramount. If the court is satisfied that both gateway factors have been established by the movant, it moves on to consider the two remaining factors – whether granting relief will result in even greater harm to the nonmoving party and whether the public interest favors such preliminary relief. The court will then exercise its discretion to determine whether the overall balance justifies granting preliminary relief. See Mallet and Co. Inc. v. Lacayo, 16 F.4th 364, 380 (3d Cir. 2021) quoting Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017).

With these standards of review in mind, and having now considered the evidence presented by the parties, the Court makes the following Findings of Fact and Conclusions of Law denying the motion for preliminary injunction. See Federal Rule of Civil Procedure 52.

**III.   Findings of Fact**

1. Plaintiff is in the business of providing indoor UV and UV-free spray tanning, tanning formulas, and related products. (ECF No. 2-2, Toepfer Declaration at ¶ 3).

2. Prior to Plaintiff's occupancy of its leased space within the Shopping Plaza, the space was leased to another tanning business, Total Tan, Inc., pursuant to a lease that was ultimately assigned to Plaintiff under the terms of an Assignment, Assumption and Modification of Lease Agreement ("Lease Assignment Agreement"), dated April 1, 2017. [ECF No. 21-2].

3. Paragraph 5 of the Lease Assignment Agreement includes an exclusive use provision ("Exclusivity Provision") that, *inter alia*, prevents Defendant from leasing space to other tenants within the Shopping Plaza who "operate a tanning salon or provide[s] related products, including UV free tanning and other related items to the above and technological evolution thereof." (Id. at ¶ 5).

4. In 2023, Defendant began seeking new tenants for the Shopping Plaza to fill the space vacated by Tops Supermarket, which terminated its lease with Defendant in February 2023. By the end of 2023, Defendant determined to divide the space into three parts among three prospective tenants: Grocery Outlet, Dollar Tree and Crunch Fitness. (ECF No. 21-1, hearing transcript, at p. 26).

5. Crunch Fitness intended to use its 40,000 square foot space primarily as a gym and fitness facility, with five UV tanning beds to be located in the front left corner of the space, which consisted of 387 square feet, or less than 1% of the total leased space. (Id at p. 28; ECF No. 21-3). The tanning beds would be for the exclusive use of its platinum-level members only (Id. at p. 51).

6. When Defendant learned about Crunch Fitness's intent to offer limited tanning services to its customers, Defendant reached out to Plaintiff by email dated March 4, 2024, and requested a waiver of the Exclusivity Provision. (ECF No. 21-4, at p. 8). Plaintiff responded on the same date indicating that, in order to waive the Exclusivity Provision, Plaintiff would require two conditions: "the right to put a Zoom Fit operation within our current space," and a rent reduction provision allowing Plaintiff the right to pay half rent in the event its gross revenue dropped below $500,000 in any 12-month period. (Id.).

7. On March 5, 2024, representatives of Plaintiff and Defendant participated in a conference call during which Defendant claims that the parties reached a verbal agreement whereby Plaintiff agreed to waive the Exclusivity Provision in return for the right to operate Zoom Fit at its location, contingent on Crunch Fitness' consent. (ECF No. 21-1, Nahum Declaration at ¶¶ 15-16; ECF No. 21-5, A. Nechemia Declaration at ¶¶ 6-7; ECF No. 21-6, M. Nechemia Declaration at ¶¶ 6-7).[3]

8. Plaintiff denies that any verbal agreement was reached by the parties during the conference call of March 5, 2024, or at any time thereafter. (ECF No. 22-1, Sarratt Declaration at ¶¶ 4-5).

9. Nonetheless, Defendant contacted Crunch Fitness during the week following the March 5, 2024 conference call to obtain its consent to allow Plaintiff to operate Zoom Fit at its location (ECF No. 27-1, hearing transcript at pp. 35-37). It did

---

[3] Defendant also claims that, during the conference call, Plaintiff's request for a rent reduction provision was denied and that Plaintiff immediately conceded to the denial. (ECF No. 27-1, hearing transcript at p. 34). Plaintiff has not refuted this claim.

6

so only after receiving email assurance from Plaintiff's President, Toepfer, on March 5, 2024, that Zoom Fit was "in no way a threat to [Crunch Fitness]" because, unlike Crunch Fitness, Zoom Fit has no personal trainers or free weights, but only has "1 circuit of weight machines and 6 pieces of cardio." (ECF No. 21-4, at pp. 4-5).

10. On March 12, 2024, Toepfer emailed Defendant and asked if there were "Any updates?" regarding Defendant's contact with Crunch Fitness. (ECF No. 21-4 at p. 4). Nahum immediately responded to Toepfer by email stating "We have a verbal from Crunch that they'll allow Zoom Fit. Your "ammo" (referring to the email assurance provided on March 5, 2024) really helped. Hope to have it in writing by the end of the week." (Id. at p. 2).

11. Nahum followed up with Toepfer by email on March 18, 2024, stating that Defendant received "verbal signoffs from both Crunch and Grocery Outlet to allow the Zoom Fit use," and attaching a lease amendment for Plaintiff's review. (Id. at p. 3).

12. Believing it had reached an agreement with Plaintiff regarding the waiver of its Exclusivity Provision in return for Crunch Fitness's consent to Plaintiff's operation of Zoom Fit at its location, Defendant finalized its lease with Crunch Fitness, which was signed on March 20, 2024. (ECF No. 27-1, hearing transcript, at pp. 38-39). The lease includes a waiver to allow Plaintiff to operate Zoom Fit at its location in the Shopping Plaza. (Id. at p. 53).

13. On March 26, 2024, Plaintiff's representative, Christina Holden ("Holden") sent an email to Nahum advising him that the "paperwork" (referring to the lease

7

amendment) was received and being reviewed by Plaintiff's attorney, and asking, "Can you please update us on when you expect to have the permission for Zoom Fit in writing?" (Id. at p. 2).

15. Nahum immediately responded to Holden's email advising her that "Crunch is signed," to which Holden responded, "Excellent!" (Id. at pp. 1-2; ECF No. 27-1, hearing transcript, at pp. 36-38).

16. No objections to or limitations on Crunch Fitness's tanning services were raised by Plaintiff at any time prior to the Crunch Fitness lease execution, as the focus was entirely on Crunch Fitness' consent to Plaintiff's provision of fitness services through its operation of Zoom Fit at its location. (ECF No. 21-1, Nahum Declaration at ¶20; ECF No. 21-5, A. Nechemia Declaration at ¶ 11; ECF No. 27-1, hearing transcript at pp. 16, 36-37).

17. Nonetheless, by letter dated April 19, 2024, Plaintiff's attorney, Sarratt, provided notice that Defendant's lease with Crunch Fitness violated the Exclusivity Provision in Plaintiff's lease because it "expressly allows Crunch Fitness to provide tanning services in its space within the Shopping Center." [ECF No. 1-4].

18. Crunch Fitness opened for business in its space within the Shopping Plaza on or about November 29, 2024. (ECF No. 27-1, hearing transcript at pp. 66-67; ECF No. 21-1, Nahum Declaration at ¶ 36). It is apparent from the record that Crunch Fitness has since offered to its customers the use of its five UV tanning beds, but does not offer UV-free spray tanning or redlight equipment. (ECF No.

1-3 at pp. 11-12). There is nothing in the record to show the extent of such use or the impact, if any, on Plaintiff's business resulting from such use.

**IV.    Conclusions of Law**

1. Preliminary injunctions are "extraordinary remed[ies] granted in limited circumstances." Razor Tech., LLC v. Hendrickson, 2018 WL 2063844, at *8 (E.D. Pa. May 3, 2018). See also Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. May 24, 2004).

2. The four-factor preliminary injunction standard requires that the moving party first demonstrate a reasonable likelihood of success on the merits and that it would likely suffer irreparable harm absent the award of an injunction. ADP, LLC v. Rafferty, 923 F.3d 113, 119-20 (3d Cir. Sept. 6, 2019) citing Reilly, 858 F.3d at 179.

3. If the movant makes that threshold showing, the court then must balance those two "gateway factors" against the relative hardship an injunction would inflict on the parties and the public interest. Id.

4. The showing of irreparable harm will be "insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a 'clear showing of immediate irreparable harm.'" Washington v. Superintendent Gilmore, 2019 WL 2610765, at *6 (W.D. Pa. Jun. 29, 2019) quoting Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. Oct. 13, 1992).

5.  When ruling on a motion for a preliminary injunction, "a court both finds facts and determines the law." See Fed.R.Civ.P. 52(a)(1) & (2). In its fact-finding capacity, at an evidentiary hearing, a court may make credibility determinations as to the witnesses' testimony and the evidence presented during the hearing. See, e.g., Hudson v. Global Resources Holdings, Inc. v. Hill, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007) ("A court considering whether to grant a preliminary injunction may assess the credibility of witnesses testifying before it at a preliminary injunction hearing and based its decisions on credibility determination.")." Berger v. Weinstein, 2008 WL at *4 (E.D. Pa. July 24, 2008).

6.  Plaintiff seeks a preliminary injunction. Accordingly, it is Plaintiff's burden to prove a likelihood of success on its claims and that it will suffer irreparable injury if a preliminary injunction is not granted.

*Likelihood of Success on the Merits*

7.  Plaintiff seeks preliminary injunctive relief on its claim of breach of contract, which requires a showing that Defendant violated the terms of the Exclusivity Provision in Plaintiff's Lease Assignment by entering a lease with Crunch Fitness that allows Crunch Fitness to offer certain of its customers the use of 5 UV tanning beds at its location within the Shopping Plaza.

8.  Defendant contends that, prior to entering its lease with Crunch Fitness, it reached an oral agreement with Plaintiff whereby Plaintiff agreed to waive the Exclusivity Provision in return for Crunch Fitness' consent to allow Plaintiff to operate Zoom Fit at its location in the Shopping Plaza.

10

9. Plaintiff denies that it ever agreed to waive its Exclusivity Provision to allow Crunch Fitness to offer tanning services in the Shopping Plaza, and argues that any oral agreement to waive the Exclusivity Provision is unenforceable in any event because such waiver must be in writing in accordance with both Pennsylvania's Statute of Frauds, 68 Pa. C.S.A. § 250.202, and the express language of the Lease Assignment itself.

10. Defendant counters that the Statute of Frauds requires evidence in writing only when a party is to be charged with "assigning, granting or surrendering" an estate in real property, <u>202 Marketplace v. Evans Prods. Co.</u>, 824 F.2d 1363, 1369 (3d Cir. 1987), which is not the case with the waiver of a contractual right like the Exclusivity Provision at issue here. Moreover, Defendant argues that Plaintiff's Lease Assignment does not prohibit oral modifications, as Plaintiff contends.

11. The Court agrees with Defendant's view that the Statute of Frauds does not prohibit or make unenforceable an oral waiver of the Exclusivity Provision, if one was, in fact, given by Plaintiff. The Court also agrees that the Lease Assignment does not expressly preclude oral modifications of the Exclusivity Provision.

12. Nonetheless, the evidence of record is insufficient to conclusively establish the existence and terms of Plaintiff's oral waiver of the Exclusivity Provision; however, the existence or non-existence of the same is likely to be established through further discovery. In the meantime, for purposes of the pending motion for preliminary injunction, there remains a substantial

likelihood of success on the merits of Defendant's breach of contract claim in the event an enforceable waiver is not established.

*Irreparable Harm*

13. The irreparable harm prong "requires courts to determine whether it is 'more likely than not [the movant will] suffer irreparable harm in the absence of preliminary relief.'" Reilly, 858 F.3d at 179.

14. To demonstrate irreparable harm, the moving party must show "immediate irreparable injury, or a presently existing actual threat." Vento v. Certain Underwriters at Lloyds, 2019 WL 2396554, at * 2 (D.V.I. Jun. 6, 2019) quoting Acierno v. New Castle Cty., 40 F.3d 645, 655 (3d Cir. Nov. 10, 1994). The harm must also be "imminent." Id. quoting Punnett v. Carter, 621 F.2d 578, 586 (3d Cir. May 13, 1980).

15. The Supreme Court has established that the movants must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction. Winter v. Natural Res. Defense Council, 555 U.S. 7, 21 (2008). A claim of irreparable harm cannot be based on speculation or hypothesis.

16. Irreparable harm is "of a peculiar nature" for which "compensation in money alone cannot atone." Id. quoting Opticians Ass'n of Am. v. Ind. Opticians of Am., 920 F.2d 187, 195 (3d Cir. Dec. 27, 1990). The injury "cannot be purely economic," but "must pose a potential harm which cannot be redressed by a legal or equitable remedy following trial." Razor Technology, 2018 WL 2063844, at *11 (internal citations omitted). See also Reilly, 858 F.3d

at n.4 ("the availability of money damages for an injury typically will preclude a finding of irreparable harm").

13. The loss of customer goodwill, business relationships, and reputation can constitute irreparable harm for purposes of preliminary injunctive relief. <u>Kos Pharms.</u>, 369 F.3d at 726.

14. Here, there is insufficient evidence demonstrating an imminent threat of loss of goodwill, business relationships, or reputation to support a finding of immediate irreparable harm. Though Plaintiff argues that irreparable harm "is almost always found in breaches of exclusivity provisions" (ECF No. 29, at p. 15 ¶ 16), the alleged breach has not been established at this point and, thus, irreparable harm cannot simply be presumed.

15. Moreover, the record evidence reveals that Plaintiff operates at least 6 of its locations nationally within one mile of a Crunch Fitness location offering tanning services, most within the same commercial plaza, directly across the street, or adjacent to each other. (ECF No. 21-1, Nahum Declaration at ¶ 41; ECF No. 27-1, hearing transcript, at p. 32; ECF No. 21-4 at pp. 4-5). The coexistence of these same businesses in close proximity to one another at other locations warrants against a finding of immediate irreparable harm under the current circumstances without concrete evidence of the same.

16. For the foregoing reasons, Plaintiff has not met its burden of showing immediate irreparable harm and its motion for preliminary injunction will be denied, accordingly.

An appropriate Order follows.